UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Yajaira R., <br><br> Plaintiff, <br><br> v. <br><br> Frank Bisignano, Commissioner of Social Security, <br><br> Defendant. | Civil No. 3:25-cv-01159 (MPS) <br><br><br><br> July 2, 2026 |

**RECOMMENDED RULING ON PENDING MOTIONS**

The Plaintiff, Yajaira R.[1], appeals the decision of the Commissioner of Social Security ("Commissioner"), rejecting her application for Disability Insurance and supplemental security income benefits under Titles II and XVI of the Social Security Act. (Compl., ECF No. 1, at 2.) She has moved the Court to reverse the decision of the Administrative Law judge ("ALJ"), on the ground that the decision was "not supported by substantial evidence in the record, and/or that his findings and conclusions constitute an abuse of his discretion, and/or constitute an error of law." (ECF No. 21, at 1.) Alternatively, she moves to remand the matter to an ALJ for rehearing, asserting that "she did not receive a full and fair hearing[.]" (*Id.*) The Commissioner has moved for an order affirming the decision. (ECF No. 27.) Chief United States District Judge Michael P. Shea referred the case to me, Magistrate Judge Thomas O. Farrish, "for all purposes including issuing a Recommended Ruling" on dispositive motions. (ECF No. 11.)

---

[1]     Pursuant to the Court's January 8, 2021 Standing Order, the Plaintiff will be identified solely by first name and last initial, or as "Plaintiff," throughout this opinion. *See* Standing Order Re: Social Security Cases, No. CTAO-21-01 (D. Conn. Jan. 8, 2021).

The Plaintiff makes three principal claims of error in her brief. First, she argues that the ALJ violated her right to due process when he relied on a post-hearing consultative examination report without giving her a fair opportunity to cross-examine the consultative examiner. (Pl.'s Memo. of L., ECF No. 21-1 ("Pl.'s Memo."), at 14-18.) Second, she argues that the ALJ's sedentary Residual Functional Capacity ("RFC") determination was not supported by substantial evidence because the RFC is not supported by medical opinion evidence. (*Id.* at 18-24.) Finally, she asserts that the ALJ failed to develop the administrative record, as the record did not contain medical opinion evidence on "how much [she] could lift or carry, or how long she could sit or stand or walk or what types(s) of assistive devices are necessary." (*Id.* at 25-28.) The Commissioner disagrees with these contentions and argues that the ALJ's decision was free of legal error and supported by substantial evidence. (*See generally* Def.'s Memo. of L., ECF No. 27-1 ("Def.'s Memo").)

Having carefully considered the parties' submissions, and having carefully reviewed the entire, 4,026-page administrative record, I agree with the Plaintiff on her second claim of error. While a sedentary RFC is the lowest of the Social Security Administration's ("SSA") exertional levels, the term is not entirely meaningless, and it requires (among other things) that the claimant be able to lift ten pounds. In this case, the ALJ cited no evidence that she could do so. I am unable to conclude that the ALJ's RFC determination is supported by substantial evidence, as the ALJ failed to provide an adequate explanation of the evidentiary basis for his finding that the Plaintiff could perform sedentary work. I therefore recommend that the Commissioner's motion to affirm be DENIED, that the Plaintiff's motion be GRANTED, and the case be remanded for further administrative proceedings.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

On November 2, 2020, the Plaintiff filed applications for Disability Insurance and supplemental security income benefits under Titles II and XVI of the Social Security Act. (R. 148, 190.) She alleged a disability onset date of October 26, 2019. (*Id.*) She claimed that she could not work because of her "bipolar, depression, broken foot, 3 concussions, stomach surgery, high blood pressure, diabetes, swollen lymph nodes, possible breast cancer[.]" (*Id.*) Although several of her conditions pre-dated her disability onset date, she claimed that she stopped working on October 26 after she was in a motor vehicle accident and broke her right ankle. (R. 148, 151, 190, 193.) The Social Security Administration ("SSA") denied the Plaintiff's applications and subsequent requests for reconsideration. (R. 160-62, 176.) The Plaintiff then requested a hearing before an ALJ (R. 226), and on November 8, 2022, ALJ John Aletta held a hearing. (R. 54.) He heard testimony from the Plaintiff and from a Vocational Expert ("VE"). (R. 55-103.) The Plaintiff's counsel, Richard Grabow, appeared on her behalf. (R. 54.)

On March 7, 2023, while the decision was pending, the Plaintiff had a medical consultative examination with Camylle Appiahene, APRN. (R. 3025-29.) NP Appiahene opined that the Plaintiff's "pain, limited range of motion, unsteady gait and the need for an assistive device will most likely cause her to have difficulty performing physical demands of work activities such as lifting, pulling, bending, and standing/walking for prolonged period." (R. 3029.) On March 23, 2023, Judge Aletta submitted a proffer letter to the Plaintiff's counsel, apprising the Plaintiff of his intent to submit NP Appiahene's report into the record. (R. 497-98.) He noted that the Plaintiff could submit written comments or questions, or that she could request a subpoena for medical records or testimony. (*Id.*) The Plaintiff responded that NP Appiahene's report was sufficient for

3

Judge Aletta to find an entitlement to benefits, and she requested a supplemental hearing to examine NP Appiahene only if the ALJ disagreed.  (R. 500.)

Judge Aletta held a second hearing on June 18, 2024.  (R. 112.)  He heard testimony from the Plaintiff and from a VE, but NP Appiahene did not appear or testify at the hearing.  (R. 113-47.)  Prior to the issuance of a decision, Judge Aletta retired, and the matter was reassigned to ALJ Louis Bonsangue.  (R. 10.)  On September 13, 2024, Judge Bonsangue issued an unfavorable Notice of Decision.  (R. 7.)  As will be further explained below, ALJs are required to follow a five-step sequential evaluation process in deciding disability claims, and Judge Bonsangue's decision followed that format.  At Step One, he concluded that the Plaintiff "has not engaged in substantial gainful activity since October 26, 2019, the alleged [disability] onset date."  (R. 13.)  At Step Two, he held that the Plaintiff had "the following severe impairments: right ankle fracture with OCD lesions/cyst status post hardware removal surgery with post-traumatic arthritis, degenerative changes of lumbar spine, obesity, bipolar disorder, post-traumatic stress disorder (PTSD), mood disorder, cannabis use disorder, and phencyclidine use disorder[.]"  (*Id.*)  He considered the Plaintiff's physical impairments of right breast cyst, right ovary cyst, and obstructive sleep apnea, but he determined that they were non-severe.  (R. 14.)

At Step Three, Judge Bonsangue concluded that the Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  He considered and rejected Listings 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root(s)), 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina), 1.18 (abnormality of a major joint(s) in any extremity), 12.04 (depressive, bipolar and related disorders), 12.08 (personality and impulse-control disorders), and

12.15 (trauma- and stressor-related disorders). (R. 14-16.) He considered whether the "Paragraph B" or "Paragraph C" criteria had been satisfied, and he concluded that they had not. (R. 16.)

Judge Bonsangue then determined that, notwithstanding her impairments, the Plaintiff retained the residual functional capacity to:

> [P]erform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can occasionally climb ramps and stairs. She requires cane to walk. The claimant cannot climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch and crawl. She can occasionally operate right foot controls. She cannot work at unprotected heights. She can tolerate occasional, brief interaction with the general public. She can tolerate occasional interaction with co-workers. She cannot engage in tasks requiring close collaboration with co-workers. She can tolerate occasional, minor changes in work setting and work procedures. She can work in a work environment where work goals are set by the employer and there are no more than occasional, minor changes in work setting and work procedures.

(*Id.*) In reaching this conclusion, he addressed the opinion of two consultative examiners – Charles Vassilopulos Ph.D., who assessed the Plaintiff's mental limitations, and NP Appiahene, who considered her physical capabilities. (R. 25-27.) He also addressed the opinions of the State agency medical consultants, Dr. Maria Lorenzo and Dr. Timothy Bessent, and the opinions of the State agency psychological consultants, Warren Leib Ph.D. and Christopher Leveille Ph.D. (R. 27-28.) He assigned varying levels of persuasiveness to these pieces of evidence. (R. 25-28.)

At Step Four, Judge Bonsangue found that the Plaintiff had no past relevant work in the last five years. (R. 29.) He therefore proceeded to Step Five and relied on the VE's testimony to find that there are jobs that exist in significant numbers in the national economy that the Plaintiff could perform, including hand packer, production worker, and product inspector. (R. 30.) Accordingly, Judge Bonsangue determined that the Plaintiff was not disabled from the date of her application through the date of the ruling. (*Id.*) On June 2, 2025, the Appeals Council denied the Plaintiff's request for review. (R. 1.)

The Plaintiff then filed this action. (Compl., ECF No. 1.) The Commissioner appeared and denied the allegations of the complaint by filing the 4,026-page Certified Administrative Record. (ECF Nos. 12, 12-1 *et seq.*) The Plaintiff then filed her motion to reverse the decision of the Commissioner (ECF No. 21), the Commissioner moved for an order affirming the decision of the Commissioner (ECF No. 27), and the Plaintiff filed a reply brief. (ECF No. 30.) The parties' motions are ripe for decision.

## II.    APPLICABLE LEGAL PRINCIPLES

To be considered disabled under the Social Security Act, a claimant must be "unable 'to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.'" *Rubin v. O'Malley, Comm'r of Soc. Sec.*, 116 F.4th 145, 147 (2d Cir. 2024) (quoting 42 U.S.C. § 423(d)(1)(A)). To determine whether a claimant is disabled, the ALJ follows a familiar five-step evaluation process.

At Step One, the ALJ determines "whether the claimant is currently engaged in substantial gainful activity . . . ." *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (first citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); and then citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v)). At Step Two, the ALJ analyzes "whether the claimant has a severe impairment or combination of impairments . . . ." *Id.* At Step Three, the ALJ then evaluates whether the claimant's disability "meets or equals the severity" of one of the Listings. *Id.* At Step Four, the ALJ uses an RFC assessment to determine whether the claimant can perform any of her "past relevant work . . . ." *Id.* If the claimant cannot do that work, the ALJ then proceeds to Step Five and addresses "whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's [RFC], age, education, and work experience." *Id.* The

6

claimant bears the burden of proving her case at Steps One through Four. *Id.* If Step Five is reached, "the burden shift[s] to the Commissioner to show there is other work that [the claimant] can perform." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 445 (2d Cir. 2012) (per curiam).

In reviewing a final decision of the Commissioner, this Court "perform[s] an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). Its role is to determine whether the Commissioner's decision is supported by substantial evidence and free from legal error. "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation marks omitted).

A disability determination is supported by substantial evidence if a "reasonable mind" could look at the record and make the same determination as the Commissioner. *See Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" (internal quotation marks and citation omitted)). Although the standard is deferential, "[s]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotation marks and citation omitted). When the decision is supported by substantial evidence, the Court defers to the Commissioner's judgment. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

An ALJ does not receive the same deference if he has made a material legal error. In other words, district courts do not defer to the Commissioner's decision "[w]here an error of law has been made that might have affected the disposition of the case . . . ." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks omitted) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)). "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

## III.    DISCUSSION

As noted above, the Plaintiff makes three principal claims of error. First, she argues that Judge Bonsangue erred in deciding the case without permitting her attorney to examine NP Appiahene at a supplemental hearing. (Pl.'s Memo. at 14-18.) Second, she asserts that Judge Bonsangue's sedentary RFC "is unsupported by substantial evidence." (*Id.* at 18-24.) Third and relatedly, she argues that the judge failed to develop the administrative record when he declined to order a supplemental hearing or to obtain other medical opinion evidence. (*Id.* at 25-28.) For reasons that will become clear, I will start with the second claim of error, and I will not reach the first or third.

The Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence because no medical opinion in the record supports the specific limitations required for sedentary work. (Pl.'s Memo. at 19.) She asserts that no medical source opined that she could stand or walk for two hours a day or lift ten pounds, or stated that a cane (rather than a walker) would be appropriate assistive device. (*Id.* at 24.) The Commissioner argues that "a medical opinion has not necessarily been required at all to reach an RFC supported by substantial evidence." (Def.'s Memo. at 11.) He also asserts that "nevertheless," the ALJ "relied upon the assessments of Drs.

Lorenzo and Bessent and APRN Appiahene, albeit in a limited fashion, among other evidence." (*Id.* at 12.)  Stated differently, he argues that a medical source opinion was not necessary for the ALJ to make his determinations – but, regardless, the ALJ did rely on medical source opinions when making his ultimate determination.

The Commissioner is correct that an ALJ's RFC determination may be supported by substantial evidence even if "there [is] no medical opinion providing the specific restrictions reflected" therein, so long as "the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity." *Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109 (2d Cir. 2020) (summary order) (internal quotation marks omitted) (quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (summary order)); *see also Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) ("[T]he ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence.").  But the ALJ must cite evidence that supports his conclusions, whether that be medical opinion evidence, medical records, documented activities of daily living, or the claimant's testimony.  He must also provide an "adequate 'roadmap' between the record and the result," since the failure to do so can "deprive[] the Court of the ability to determine accurately whether the ALJ's decision is supported by substantial evidence." *Janita H. v. Comm'r of Soc. Sec.*, No. 7:21-cv-05199 (GRJ), 2023 WL 196158, at *8 (S.D.N.Y. Jan. 17, 2023).

In this case, the Court does not observe substantial evidence for the proposition that the Plaintiff could lift ten pounds at a time, which is required for sedentary work.  20 C.F.R. §§ 404.1567(a), 416.967(a).  The Plaintiff testified that she has problems with lifting and carrying objects, stating that she is "not supposed" to do any lifting and, if she did any lifting, "probably less than ten pounds."  (R. 69-70.)  NP Appiahene opined that the Plaintiff would "have difficulty

performing physical demands of work activities such as lifting," (R. 3029), but she did not define "difficulty" in functional terms.

Judge Bonsangue concluded that the Plaintiff's physical impairments supported a sedentary work capacity, citing findings from physical examinations.  Regarding the Plaintiff's right ankle fracture, he cited to evidence showing that the Plaintiff "has used assistive devices, more recently a cam boot walker and cane" and had "mild tenderness, pain, and reduced range of motion documented," concluding that the evidence "support[ed] the sedentary work capacity" with limitations to using a cane, postural limitations, and environmental limitations.  (R. 19.)  Similarly, when he discussed the Plaintiff's lumbar spine degenerative changes, he noted that "while her degenerative changes are mild, per x-ray in 2022, she has evidence of pain to her spine with range of motion," and concluded that the evidence supported the sedentary work capacity with postural and environmental limitations.  (R. 20.)  But it is unclear how those examination findings support a sedentary work capacity, particularly the requirement that she be capable of lifting ten pounds.

The Commissioner argues that Judge Bonsangue's RFC findings were consistent with NP Appiahene's opinion, writing that "the ALJ properly inferred that APRN Appiahene would agree that Plaintiff could perform work at least within such sedentary RFC."  (Def.'s Memo. at 12-13.)  But the record does not support this characterization.  Judge Bonsangue found her opinion only "partially persuasive," explicitly acknowledging that she "did not define the term 'difficulty' or 'prolonged' with regards to lifting, pulling, bending, and standing/walking."  (R. 26-27.)  He did not conclude that this opinion supported a sedentary RFC – he concluded only that the "objective evidence on record" supported some "limitations in these areas of functioning[.]"  (R. 27.)  An opinion that the Plaintiff would have "difficulty" with lifting says nothing about whether or not she can lift ten pounds, which is what sedentary work requires.  The ALJ cannot acknowledge that

10

an opinion is too vague to define functional limitations, while silently inferring specific functional abilities from that same opinion. To do so is precisely the kind of gap in reasoning that would deprive the Court of the ability to determine whether the RFC is supported by substantial evidence. *See Janita H.*, 2023 WL 196158, at *8.

The Commissioner also points to the findings of the state agency consultants, Drs. Lorenzo and Bessent, arguing that Judge Bonsangue "reasonably inferred that Drs. Lorenzo and Bessent agreed that Plaintiff could perform work at least within the very restrictive sedentary RFC[.]" (Def.'s Memo., at 12.)  But Judge Bonsangue outright rejected these opinions as "not persuasive," stating that they were "not supported by their analysis[.]" (R. 27.)  If he did rely on these opinions in a "limited fashion," as the Commissioner suggests, this reliance on medical opinions he found "not persuasive" would be "so opaque as to frustrate review."  *Lisette R. o/b/o C.J.O. v. Kijakazi*, No. 3:22-cv-00784 (TOF), 2023 WL 6357961, at *6 (D. Conn. Sept. 29, 2023).  Again, an ALJ cannot reject a medical opinion while silently relying on that opinion to support his RFC determination – the reviewing court must be able to build a "logical bridge from the evidence to the ALJ's conclusion," and "a district court must remand where the ALJ's decision was not thoroughly explained in a manner that allows the court to be comfortable that it was supported by substantial evidence." *Tami B. v. Comm'r of Soc. Sec.*, No. 3:21-CV-01460 (JCH), 2023 WL 2403898, at *8 (D. Conn. Mar. 7, 2023) (internal quotation marks omitted) (quoting *Simon v. Comm'r of Soc. Sec. Admin.*, 2020 WL 6488427, at *6 (E.D.N.Y. Nov. 4, 2020)).

In the SSA's hierarchy of exertional levels, "sedentary work" is the least stressful.  20 C.F.R. §§ 404.1567(a), 416.967(a).  But the term is not entirely devoid of meaning.  To find that the Plaintiff could perform sedentary work with limitations, Judge Bonsangue needed a sufficient evidentiary basis to conclude that the Plaintiff could lift ten pounds at a time, among other things.

11

*Id*.; *see also* SSR 96-9p, 1996 WL 374185.  And when he formulated the RFC, he was required to identify the evidence that supported his conclusions and "build an accurate and logical bridge from the evidence to [his] conclusion to enable meaningful review."  *Janita H.*, 2023 WL 196158, at *8. He did not do so, and it is not the reviewing court's task to sift through a 4,026-page administrative record in search of substantial evidence of functional capacity that the ALJ himself did not cite. *See, e.g., Gina B. v. Comm'r of Soc. Sec.*, No. 3:23-cv-00769 (RAR), 2024 WL 4262640, at *7 (D. Conn. Sept. 23, 2024) ("[T]here may, in fact, be substantial evidence in the record to support the ALJ's RFC determination, however, the broad and conclusory statements used by the ALJ, with a lack of clear citation to the record leave the Court unable to make that determination.").

In these respects, this case is very much like *Robles v. Saul*, No. 3:19-cv-1329 (TOF), 2020 WL 5405877 (D. Conn. Sept. 9, 2020).  In *Robles*, an ALJ concluded that the claimant could "perform the full range of sedentary work" despite his coronary artery disease.  *Id.* at *5.  The Court noted that "[t]he 'full range of sedentary work' requires, among other things, that the claimant be able to lift ten pound and 'stand and walk for a total of approximately 2 hours during an 8-hour workday.'"  *Id.* (citing 20 C.F.R. §§ 404.1567(a), 416.967(a)).  But none of the "sources of information" cited by the ALJ "provided him with a sufficient foundation for his conclusions about the effects of the [claimant's coronary artery disease] on his functional capabilities."  *Id.* "To find that the Plaintiff was capable of the 'full range of sedentary work' without limitation, the ALJ needed a sufficient basis for concluding that a man whose coronary artery is half-blocked . . . can nevertheless lift up to ten pounds and stand and walk for up to two hours in an eight-hour shift."  *Id.* at *9.  "Presumably, cases in which no such basis appears anywhere in a 2,000-plus page administrative record will be quite rare."  *Id.*  But *Robles* was such a case.

In this case, as in *Robles*, the ALJ did not cite substantial evidence in support of his conclusion that the Plaintiff could meet the lifting requirements of a sedentary RFC. The Plaintiff testified at the hearing that she could not lift ten pounds because of the pain it would cause in her back and foot. (R. 68-69.) The ALJ acknowledged this testimony in his opinion (R. 17) ("The claimant has problems lifting and carrying items should be under 10 pounds."), and he further acknowledged what NP Appiahene said on the subject – that is, that the Plaintiff's "pain, limited range of motion, unsteady gait and the need for an assistive device will most likely cause her to have difficulty performing physical demands of work activities such as lifting[.]" (R. 26; *see also* R. 3029). In assigning a sedentary RFC, however, he implicitly concluded that the Plaintiff *could* lift ten pounds. But he cited no evidence for that proposition. (*See* R. 16-29.)

The Commissioner attempts to back-fill this hole on appeal, but his attempts are unpersuasive, for several reasons. First, and as noted above, his attempt to justify the sedentary RFC by citation to NP Appiahene's opinion (Def.'s Memo. at 8-9) is unsupported by the opinion itself. NP Appiahene did not say that the Plaintiff could lift ten pounds; the only thing she said on the topic of lifting was that the Plaintiff would "have difficulty" with it. (R. 3029.) Second – and as also noted above – the Commissioner cannot plausibly cite the state agency consultants' reports for this purpose (Def.'s Memo. at 8), because the ALJ himself did not find those reports persuasive. (R. 27.) Third, the ALJ's discussion of the Plaintiffs' activities of daily living cannot supply substantial evidence of her ability to lift ten pounds (Def.'s Memo. at 8-9), because most of the activities he cited do not inform the question of lifting capacity. (*See* R. 17) (stating that the Plaintiff can shower, brush her teeth, go on Facebook, and go to church). The Commissioner does cite one such activity in his brief – grocery shopping – but he notes with admirable candor that the Plaintiff could shop for groceries only "with assistance for lifting." (Def.'s Memo. at 9; *see also*

13

R. 72-73.)  Fourth and finally, the Commissioner observes substantial evidentiary support for the sedentary RFC in the ALJ's citation to the Plaintiff's medical records, but he does not explain how those citations support the conclusion.  (Def.'s Memo. at 10.)  And in any event, it is well established that ALJs "ordinarily cannot translate diagnoses, medical test results and the like into functional vocational terms" without more assistance than the ALJ had here.  *Robles*, 2020 WL 5405877, at *4.

For the foregoing reasons, I conclude that Judge Bonsangue's RFC determination is not supported by substantial evidence.  While the Court agrees with the ALJ's observation that NP Appiahene's opinion does not clearly define the extent of the Plaintiff's difficulty, the ALJ did not seek clarification from NP Appiahene, rely on any other opinions, or otherwise explain how any of the evidence of record supported the highly-specific determination that the Plaintiff had the RFC to perform a limited range of sedentary work.  Because the ALJ did not describe his reasoning for finding that the Plaintiff could (among other things) lift up to ten pounds, and because none of the medical sources attempted to quantify the extent of the Plaintiff's limitations in lifting, pulling, bending, or standing/walking, the Court is unable to determine whether that finding is supported by substantial evidence. "[R]emand is especially appropriate where further findings or explanation will clarify the rationale for the ALJ's decision."  *Tami B.,* 2023 WL 2403898, at *8 (internal quotations marks and citation omitted).  Therefore, I recommend that the District Judge remand this case so that the ALJ may readdress the Plaintiff's RFC, including by further development of the record as necessary.

## IV.    CONCLUSION

When a plaintiff in a Social Security appeal makes multiple claims of error, and the court accepts one and remands the case for further administrative proceedings, the court often does not

address the plaintiff's other claims.  Rather, the court simply instructs the ALJ to consider all claims of error at the new hearing.  *See, e.g., Robles*, 2020 WL 5405877, at *10 ("Upon remand, the Commissioner shall consider all of the Plaintiff's claims of error not discussed in this decision."); *Pacheco v. Saul*, No. 3:19-cv-987 (WIG), 2020 WL 113702, at *8 (D. Conn. Jan. 10, 2020) ("On remand, the Commissioner will address the other claims of error not discussed herein."); *Moreau v. Berryhill*, No. 3:17-cv-396 (JCH), 2018 WL 1316197, at *4 (D. Conn. Mar. 14, 2018) ("Because the court finds that the ALJ failed to develop the record, it also suggests that the ALJ revisit the other issues on remand, without finding it necessary to reach whether such arguments would themselves constitute legal error justifying remand on their own."). I will therefore not address the plaintiff's first or third claims of error, but instead recommend that the District Judge direct the ALJ to consider those claims in the remand proceedings.

For the reasons stated above, I recommend that the District Judge: (1) grant the Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 21); (2) deny the Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 27); and (3) remand the case for further proceedings.

This is a recommended ruling by a magistrate judge.  *See* Fed. R. Civ. P. 72(b)(1).  Any objections to this recommended ruling must be filed with the Clerk of the Court within fourteen (14) days of being served with this order.  *See* Fed. R. Civ. P. 72(b)(2).  Failure to object within fourteen (14) days will preclude appellate review.  *See* 28 U.S.C. § 636(b)(1); Rules 72, 6(a) and 6(e) of the Federal Rules of Civil Procedure; D. Conn. L. Civ. R. 72.2; *Impala v. United States Dep't of Justice*, 670 F. App'x 32 (2d Cir. 2016) (summary order) (failure to file timely objection to Magistrate Judge's recommended ruling will preclude further appeal to Second Circuit); *Small v. Secretary of H.H.S.*, 892 F.2d 15 (2d Cir. 1989) (per curiam).

*/s/ Thomas O. Farrish*

Hon. Thomas O. Farrish
United States Magistrate Judge